UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>AUBREY JACKSON SHELTON,<br>Defendant. | Case No. 23-cr-00258-JSC-1<br><br>**ORDER DENYING GOVERNMENT'S REQUEST TO DISMISS COUNTS 1-8 OF THE INDICTMENT**<br><br>Dkt. Nos. 65, 76, 83, & 84 |

Pursuant to Federal Rules of Criminal Procedure 48(a), the government moves for leave to dismiss Counts 1-8 of the indictment charging Aubrey Shelton with wire and mail fraud arising out of his alleged embezzlement from his then employer. (Dkt. No. 65.)[1] The government seeks to proceed on four remaining counts of tax evasion. The government's admitted purpose in dismissing the Counts is to avoid having Mr. Shelton's former employer advance Mr. Shelton's legal fees, as a Delaware court ordered that it do. Having carefully considered the parties' submissions, and having had the benefit of oral argument on October 16, 2024, the Court DENIES the government leave to dismiss Counts 1-8. To permit the government to do so would violate Mr. Shelton's Sixth Amendment right to counsel of his choice.

**BACKGROUND**

On August 15, 2023, the government indicted Mr. Shelton with three counts of bank fraud (Counts 1-3), five counts of wire fraud (Counts 4-8), and four counts of tax evasion (Counts 9-12) arising from an alleged seven-years long scheme to embezzle funds from his employer ("the Employer"). (Dkt. No. 1.) The government alleges Mr. Shelton used his control of the

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1   Employer's payroll account to submit false information to the payroll processor about the amount
2   of money he was entitled to receive, including inflating his salary and bonus and representing that
3   he was entitled to receive "executive loans" and "reimbursements" that he did not actually incur
4   and was not entitled to receive.  (*Id.*)

5   After his indictment, Mr. Shelton initiated an action in the Delaware Court of Chancery to
6   require the Employer advance his legal fees pursuant to an Indemnification Agreement he signed
7   in February 2020 while working at the company.  (Dkt. No. 76-2 (indemnification agreement).)
8   On May 13, 2024, the Court of Chancery ruled on cross-motions for summary judgment, and
9   ordered the Employer to advance Mr. Shelton's expenses for Counts 1-8 of the federal indictment
10  (the bank and wire fraud charges), but not expenses incurred solely for Counts 9-12 (the tax
11  evasion charges).  (Dkt. No. 76-3 at 3-4.)  The Employer initially complied with the Delaware
12  court's Order.  (Dkt. 76-5 at 2-4.)

13  Less than two months after the Delaware court ordered the fees advancement, the
14  Employer wrote the government to complain that the Employer was financially strained by the
15  Delaware Court's order requiring it to advance Mr. Shelton's legal fees.  (Dkt. No. 83-1 at 4-5.)
16  The Employer requested the government dismiss Counts 1-8 in order to relieve the company of its
17  court-ordered obligations for financial reasons.  (*Id.* at 5.)  The government subsequently informed
18  Mr. Shelton and the Employer that it planned to dismiss the charges as the Employer proposed.
19  (Dkt. No. 82-1 ¶ 3.)  The Employer thereafter decided not to advance Mr. Shelton's legal expenses
20  incurred after the date it was notified of the government's decision.  (Dkt. 76-5 at 2-4.)  As
21  required by Federal Rules of Criminal Procedure 48(a), the government then requested leave of
22  court to dismiss Counts 1-8.  (Dkt. 65.)  Mr. Shelton argues that dismissal of these Counts for the
23  purpose of terminating the Employer's obligation to pay his legal fees violates the Sixth
24  Amendment.

25  Jury trial is currently scheduled to commence on December 2, 2024, with a pretrial
26  conference scheduled for November 13, 2024.

27  //
28  //

**DISCUSSION**

**A.  Federal Rules of Criminal Procedure 48(a)**

"At common law a prosecutor had unrestricted authority to enter a *nolle prosequi* without the consent of the court." *United States v. Gonzalez*, 58 F.3d 459, 460 (9th Cir. 1995). Federal Rules of Criminal Procedure 48(a) "represents a departure from the common law," providing instead that "the Government may file a dismissal of an indictment, information, or complaint 'by leave of court.'" *United States v. Garcia-Valenzuela*, 232 F.3d 1003, 1007 (9th Cir. 2000). The rule's primary purpose is "to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection." *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977); *see also Gonzalez*, 58 F.3d at 461 ("The primary purpose of the requirement that leave of court be obtained is to grant judges discretion to prevent the government from using its discretionary power to dismiss indictments for purposes of harassment.").

"[A] district court is limited in its ability to second-guess the government's decisions on whether and what to prosecute." *García-Valenzeula*, 232 F.3d at 1007. "The decision to dismiss an indictment implicates concerns that the Executive is uniquely suited to evaluate, and a district court should be reluctant to deny its request." *Gonzalez*, 58 F.3d at 462. But, when, as here, "the defendant contests a Rule 48(a) motion, the motion raises concerns that are not present when the court considers an uncontested motion to dismiss: the district judge … must be careful to safeguard [the defendant's] rights." *Id.*

**B.  Dismissal of Counts 1-8 Would Violate the Sixth Amendment**

In *Luis v. United States*, 578 U.S. 5 (2016), the government charged the defendant with healthcare fraud. Pursuant to statute, the government obtained a pretrial order freezing all of the defendant's assets up to the amount of the alleged healthcare fraud ($45 million), including assets unrelated to the fraud (untainted assets). *Id.* at 8-9. The defendant argued the untainted assets freeze prevented her from hiring counsel of her choice and so violated her Sixth Amendment right to counsel. The Supreme Court agreed.

The Court held the Sixth Amendment "guarantees a defendant the right to be represented

3

by an otherwise qualified attorney whom that defendant can afford to hire." *Id*. at 12. This right is "fundamental" and "the wrongful deprivation of the right to counsel [is] a 'structural' error that so 'affec[ts] the framework within which the trial proceeds' that courts may not even ask whether the error harmed the defendant." *Id.* at 11 (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2005)). Four justices held the government's interest in preserving the defendant's untainted assets for payment of forfeiture and restitution to the victims of the healthcare fraud was not outweighed by the defendant's Sixth Amendment right to counsel of her choice. *Id.* at 19 ("despite their importance, compared to the right to counsel of choice, these interests [ensuring funds for forfeiture/restitution] would seem to lie somewhat further from the heart of a fair, effective criminal justice system"). Because the defendant's property was hers, untainted by crime, and she "need[ed] some portion of those same funds to pay for the lawyer of her choice," "the Sixth Amendment prohibit[ed] the court order that the Government s[ought]." *Id.* at 18. Justice Thomas concurred in the decision, but rather than balancing the government's interests and the defendant's right to counsel of her choice, Justice Thomas held the Sixth Amendment prevents the government from obtaining a freeze of untainted assets, period. *Id.* at 24-25 (Thomas, J., concurring).

It is undisputed the Delaware Court of Chancery ordered the Employer to advance Mr. Shelton's legal fees for defending Counts 1-8. It is also undisputed the government seeks leave to dismiss Counts 1-8 so that the Employer will no longer be obligated to pay Mr. Shelton's legal fees. Finally, it is undisputed that without the Employer advancing Mr. Shelton's legal fees, Mr. Shelton will not be able to have counsel of his choice, Mr. Fee, represent him at trial.[2] Based on these undisputed facts, *Luis* compels the conclusion that permitting the government to dismiss Counts 1-8 for the admitted purpose of relieving the Employer from its court-ordered obligation to advance Mr. Shelton his legal fees would violate the Sixth Amendment. Like the assets in *Luis*,

---

[2] Mr. Shelton financially qualifies for appointed counsel, and a federal defender was initially appointed to represent him. (Dkt. Nos. 5, 7.) When private counsel Mr. Fee appeared on behalf of Mr. Shelton, he advised it was based on his opinion that the indemnification agreement required payment of Mr. Shelton's legal fees and that Mr. Shelton would be filing an action in Delaware to enforce that right. Mr. Shelton did file that action and, as explained, the Delaware court agreed with Mr. Shelton.

4

Mr. Shelton's indemnification agreement, as enforced by the Delaware court, provides him with untainted assets; namely, the advancement of his legal fees in this criminal action. And, as the government in *Luis*, the government seeks to deprive Mr. Shelton of those assets leading to his inability to pay counsel of his choice. Indeed, the government admits its decision to dismiss Counts 1-8 is based solely on its acquiescence to the Employer's request that the government dismiss those charges so that it would no longer need to pay Mr. Shelton's legal fees. (Dkt. No. 83-1 at ¶ 3.) The primary difference between *Luis* and here is that rather than seeking a "freeze" on the assets, the government seeks to eliminate the assets all together. So, an order granting the government leave to dismiss Counts 1-8 "would seriously undermine that constitutional right" to counsel of one's choice. *Luis,* 578 U.S. at 19.

*United States v. Stein*, 541 F.3d 130 (2d Cir. 2008), is instructive. There the defendants moved to dismiss all charges against them based upon the Department of Justice's "Thompson memorandum," which stated that "payment of legal fees for employees and former employees may be viewed as protection of culpable employees and thus cut in favor of indicting the entity." *United States v. Stein*, 435 F. Supp. 2d 330, 363 (S.D.N.Y. 2006). KPMG, the defendants' employer, had a long-standing policy of paying its employees' legal fees in similar cases, but attested that the Thompson memorandum substantially influenced its decision to not advance the defendants' legal fees. *Stein*, 541 F.3d at 140. As a result of the employer's decision, some defendants had been unable to retain counsel of their choice and other counsel were limited in their work because of the lack of funds. *Id.* The trial court determined the government's policy—which dissuaded KPMG from advancing the defendants' legal fees—violated the defendants' Sixth Amendment right to counsel of their choice. *Id.* at 151.

The Second Circuit affirmed. It first held "[i]t is axiomatic that if defendants had already received fee advances from KPMG, the government could not (absent justification) deliberately interfere with the use of that money to fuel their defenses." *Id.* at 155. And the government conceded it also could not "prevent a lawyer from furnishing a defense gratis." *Id.* From these two propositions, the court determined "if the Sixth Amendment prohibits the government from interfering with such arrangements, then surely it also prohibits the government from interfering

5

with financial donations by others." *Id.* at 156 (citing *United States v. Inman*, 483 F.2d 738, 739-40 (4th Cir. 1973) (per curiam)). And surely the Sixth Amendment also prohibits the government from interfering with contractual (and court-ordered) obligations to fund a defense.

That the situation here is in some ways the reverse of that in *Stein* does not mean the result should be different. Indeed, the *Stein* trial court was focused on "the extrajudicial action by the government that deliberately or recklessly tilt[ed] the playing field against a criminal defendant." *Stein*, 435 F. Supp. 2d at 362 n.159. There, it was the government pressuring a company to withhold its payment of funds to a defendant when it would have otherwise paid them. Here, it is the government acting jointly with the company to ensure the company is no longer contractually obligated to pay the defendant's legal fees. In either case, the government deprives the defendant of untainted assets and so violates the defendant's Sixth Amendment right to counsel of choice.

The government's insistence "there was no state action with respect to Shelton's legal fees, and so there can be no constitutional violation" (Dkt. No. 82 at 12), is unpersuasive. The Employer's reasonable desire to not pay Mr. Shelton's legal fees would not violate Mr. Shelton's Sixth Amendment right to counsel of his choice unless and until the government *acts* to dismiss Counts 1-8 for the admitted purpose of ensuring that the Employer does not have to pay his fees. Indeed, just as the government's action in *Stein*—the Thompson memorandum—dissuaded the defendants' employer from paying their legal fees, so too the government's act here—moving to dismiss Counts 1-8—has already persuaded the Employer to stop advancing Mr. Shelton's fees.

Next the government argues the Sixth Amendment is not violated in these circumstances because it is acting in "good faith." But, the government in *Luis* demonstrated the exact same good faith: it did not seek to freeze the defendant's untainted assets for the purpose of making it harder for the defendant to retain counsel of her choice, it sought to freeze the assets to ensure restitution for the victims of the alleged fraud. So, the government's alleged good faith is immaterial. It is also one-sided. It is "good faith" toward the victim, but arguably not good faith toward the defendant's Sixth Amendment right to counsel of his choice. *See Stein*, 435 F. Supp. 2d at 362 n.159 (explaining the government's conduct "tilt[ed] the playing field against a criminal defendant").

6

1       Finally, at oral argument the government argued for the first time that because the
2 Delaware court order requires the Employer to advance fees for the defense of Counts 1-8, Mr.
3 Shelton is not being deprived of untainted assets that could be used to pay counsel to defend the
4 tax evasion charges (Counts 9-12).  The government points to language in the parties' fees
5 stipulation that Mr. Shelton is to in good faith "exclude fees for services performed and expenses
6 incurred solely in connection with the Non-Advanceable Counts." (Dkt. No. 76-3 at 3.)  So,
7 argues the government, because Mr. Shelton has a property interest in advanced fees for Counts 1-
8 8 and no property right to advanced fees for Counts 9-12, there can be no Sixth Amendment
9 violation.
10      But the Delaware court's order itself demonstrates Mr. Shelton's property interest.  It
11 requires Mr. Shelton to exclude from requested expenses those "incurred *solely* in connection"
12 with the tax evasion counts.  (Dkt. No. 76-3 at 3-4 (emphasis added).)  Indeed, it states that Mr.
13 Shelton shall "include" expenses incurred "in connection *with both* the Non-Advanceable Counts
14 and the Advanceable Counts that reasonably cannot be attributed solely to the Non-Advanceable
15 Counts or the Advanceable Counts." (*Id*. (emphasis added).)  It thus recognizes that the court-
16 ordered expenses are used in defense of the fraud *and* tax evasion charges.  Such an order makes
17 sense as the tax evasion charges are derivative of the embezzlement charges.  Indeed, the
18 government admits that "[w]hether or not we proceed on the bank and wire fraud counts, that
19 conduct is centrally relevant to the tax evasion counts, and thus would have to be part of the
20 factual basis of any plea." (Dkt. No. 76-4 at 2.)  So, when expenses were advanced for the defense
21 of the fraud charges they were advanced for the defense of the tax evasion charges.  And when the
22 government seeks to eliminate the contractual obligation to advance expenses in defense of the
23 fraud charges it therefore seeks to eliminate the contractual obligation to advance expenses in
24 defense of the tax evasion charges.  Permitting such interference with untainted assets would
25 violate Mr. Shelton's Sixth Amendment right to counsel of choice.
26      The government urges that its exercise of its prosecutorial discretion cannot violate Mr.
27 Shelton's Sixth Amendment right to counsel of choice, especially, when, as here, it is merely
28 seeking to avoid exacerbating harm to an alleged victim.  It argues that if it had never charged Mr.

7

Shelton with the embezzlement counts, and from the beginning had only indicted him on the tax evasion charges, he would have no property right to advancement of legal fees; so, dismissing those charges a year into the case is no different.  The Court does not agree.  Under the undisputed facts, the government did charge Mr. Shelton with fraud.  The Delaware court has ordered the Employer to advance Mr. Shelton's legal fees for both the fraud charges and tax evasion charges to the extent the fees cannot be attributed solely to the tax charges.  The pretrial conference is scheduled to be held in less than a month.  And until the government advised the Employer that it would acquiesce in the Employer's request to dismiss the fraud charges, the Employer did pay the expenses—expenses that were incurred in defending the fraud and tax evasion counts.  So, the government's conduct will interfere (and perhaps already has interfered) with Mr. Shelton's ability to retain counsel of his choice.

### C. Leave to Dismiss Will be Denied

In light of the Court's conclusion that permitting the government to dismiss Counts 1-8 for the express purpose of relieving the Employer of its obligation to advance his legal fees would violate the Sixth Amendment, it follows that the Court should not approve the proposed dismissal.[3]

*United States v. Deschambault*, No. 19-cr-00187-JAW, 2023 WL 4974003, at *14-15 (D. Me. Aug. 3, 2023), is not to the contrary.  In *Deschambault*, the government had charged the defendant with two counts of sexual exploitation in 2019, only to obtain a superseding indictment in 2021 adding a charge for child pornography.  *Id.* at *1.  In December 2022, the government dismissed the child pornography charge and trial began three weeks later.  *Id.*  On appeal, the defendant argued the prosecution's actions amounted to "gamesmanship" because the government dismissed the child pornography count to limit "the scope of cross-examination of the victim" to "defend the victim's rights under the Crime Victim's Rights Act."  *Id.* at *14.  The trial court held this action was not improper because the government was not improperly motivated and the

---

[3] At the October 16 hearing, Mr. Shelton argued the Sixth Amendment violation already materialized because the fees the Employer had stopped advancing already impacted the defense's ability to pay its vendors and experts.  These factual contentions are not in the record so they do not play any role in the Court's Order.

8

1   decision to bring one less charge would not "jeopardize [the defendant's] defense." *Id.*  But the

2   court held the dismissal did not jeopardize the defendant's defense.  Here, in contrast, the

3   government's proposed dismissal not only jeopardizes Mr. Shelton's ability to fund his defense, it

4   also likely violates his Sixth Amendment right to counsel of his choice.

5           The government notes the Ninth Circuit has only approved denial of leave under Rule

6   48(a) in two situations: (1) the government has engaged in prosecutorial harassment, e.g.,

7   charging, dismissing and recharging, and (2) the dismissal is not in the public interest.  (Dkt. No.

8   82 at 8 (citing *Garcia-Valenzuela*, 232 F.3d at 1008).)   But *Garcia-Valenzuela* does not hold

9   those are the only two situations in which leave may be denied.  *See United States v. Hector*, 577

10  F.3d 1099, 1102-03 (9th Cir. 2009) (remanding case to the district court to consider double

11  jeopardy considerations after holding the court did not properly exercise its discretion when

12  granting the government's motion for leave under Rule 48(a)).  And, in any event, depriving a

13  defendant of his Sixth Amendment right to counsel of his choice is "clearly contrary to the public

14  interest."  *García-Valenzuela*, 232 F.3d at 1008 (quoting *Gonzalez*, 58 F.3d at 462).  As the *Luis*

15  Court noted, permitting the government to restrain untainted assets that could be used to retain

16  counsel will require more defendants to "fall back upon publicly paid counsel, including

17  overworked and underpaid public defenders."  5 U.S. at 21.  It is also as unfair, if not more unfair,

18  as charging, dismissing, and recharging.  There is simply no good argument that the Court must

19  approve a dismissal that leads to a violation of a defendant's Sixth Amendment right to counsel of

20  his choice.

21          **D.**    **Motions to Seal**

22          The parties have also filed motions to seal the letter from the Employer's counsel to the

23  government.  (Dkt. Nos. 83 & 84).  Because the Employer is the alleged victim in this matter, is

24  not a party, and the letter contains sensitive information about its finances and other such details,

25  the Court GRANTS both motions.  The relevant portions of both parties' briefings which make

26  reference to this letter may remain redacted.

27  //

28  //

**CONCLUSION**

For the reasons explained above, the Court exercises its discretion to DENY the government's request for leave under Federal Rules of Criminal Procedure 48(a) to dismiss Counts 1-8 but continue to trial on Counts 9-12.  The Administrative Motions to File Under Seal (Dkt. Nos. 83, 84) are GRANTED.

This Order disposes of Docket Nos. 65, 76, 83, and 84.

**IT IS SO ORDERED.**

Dated: October 17, 2024

JACQUELINE SCOTT CORLEY
United States District Judge